**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE: | ) | No. 14-MD-2543 (JMF) |
| | ) | |
| GENERAL MOTORS LLC IGNITION SWITCH LITIGATION | ) ) | Case No. |
| | ) | |
| This Document Relates to: | ) | COMPLAINT |
| | ) | |
| COURTNEY OLUFS, individually; | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| JOSHUA OLUFS, individually; | ) | |
| | ) | |
| REGINA WERTH, individually; | ) | |
| | ) | |
| MICHAEL SAUSEDA, individually; | ) | |
| | ) | |
| TRACY COLEMAN, on behalf of the class of members of the deceased, KENNETH COLEMAN; | ) ) ) | |
| | ) | |
| BRANT HACKBARTH, individually; | ) | |
| | ) | |
| GINA MCGHEE, individually; | ) | |
| | ) | |
| MONICA SMITH, individually; | ) | |
| | ) | |
| MATTHEW SHELBY, individually; | ) | |
| | ) | |
| DARRIN FISCHER, individually; | ) | |
| | ) | |
| TERRY DAVIS, individually; | ) | |
| | ) | |
| ANDRE FORBES, individually; | ) | |
| | ) | |
| MARY PATRICK, individually; | ) | |
| | ) | |
| TIFFANEY DAVIS, individually; | ) | |
| | ) | |
| JEROME SILLS, individually; | ) | |
| | ) | |
| MICHAEL HIGGINS, on behalf of the class of members of the deceased, SHATORA HIGGINS; | ) ) ) | |
| | ) | |
| STEVE SMITH, individually; | ) | |

| | |
|---|---|
| FRANKLIN EDWARDS, individually; | ) |
| | ) |
| ANDREA SACHS, individually; | ) |
| | ) |
| KEISHA LAVERGNE, individually; | ) |
| | ) |
| CHARLES VALCARCE-STUART, on behalf of the Estate of ROSAURA VALCARCE-STUART; | ) ) ) |
| | ) |
| DAVID BOTELLO, individually; | ) |
| | ) |
| ANGELICA ALVARADO, individually; | ) |
| | ) |
| LOUIS MOYSELLO, individually; | ) |
| | ) |
| PETER CARPENTER, individually; | ) |
| | ) |
| MARY CARPENTER, individually; | ) |
| | ) |
| & | ) |
| | ) |
| AMBER JAMES, individually, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| GENERAL MOTORS LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **COMPLAINT**

COME NOW Plaintiffs, and for their claims and causes of action for their injuries, against

Defendant GENERAL MOTORS LLC, allege as follows:

### I.    PARTIES, JURISDICTION, AND VENUE

1.      Plaintiffs COURTNEY OLUFS and JOSHUA OLUFS are and were at all times

relevant residents and citizens of the State of Illinois.

2.      Plaintiff REGINA WERTH is and was at all times relevant a resident and citizen of

2

the State of Florida.

3.      Plaintiff MICHAEL SAUSEDA is and was at all times relevant a resident and citizen of the State of Texas.

4.      Plaintiff TRACY COLEMAN is and was at all times relevant a resident and citizen of the State of Mississippi. Tracy Coleman survives Kenneth Coleman as his lawful wife.  Tracy Coleman brings this action for her husband's wrongful death on behalf of all eligible class members.  Kenneth Coleman died from injuries he sustained in a car accident on December 5, 2008.

5.      Plaintiff BRANT HACKBARTH is and was at all times relevant a resident and citizen of the State of Pennsylvania.

6.      Plaintiff GINA MCGHEE is and was at all times relevant a resident and citizen of the State of Alabama.

7.      Plaintiff MONICA SMITH is a resident and citizen of the State of North Carolina. Plaintiff MONICA SMITH was in an accident in the State of Nevada.

8.      Plaintiff MATTHEW SHELBY is a resident and citizen of the State of Alabama. At the time of the accident, Plaintiff MATTHEW SHELBY was a resident and citizen of the State of Maryland.

9.      Plaintiff DARRIN FISCHER is a resident and citizen of the State of Illinois. At the time of the accident Plaintiff DARRIN FISCHER was a resident and citizen of the State of Wisconsin.

10.      Plaintiff TERRY DAVIS is and was at all times relevant a resident and citizen of the State of Florida.

11.      Plaintiff ANDRE FORBES is a resident of the State of Louisiana.  The accident occurred in the State of Arkansas.

3

12.     Plaintiff MARY PATRICK is and was at all times relevant a resident and citizen of the State of California.

13.     Plaintiff TIFFANEY DAVIS is and was at all times relevant a resident and citizen of the State of Virginia.

14.     Plaintiff JEROME SILLS is and was at all times relevant a resident and citizen of the State of Massachusetts.

15.     Plaintiff MICHAEL HIGGINS is and was at all times relevant a resident and citizen of the State of Ohio.  Michael Higgins survives Shatora Higgins as her lawful father.  Michael Higgins brings this action for his daughter's wrongful death on behalf of all eligible class members. Shatora Higgins died from injuries she sustained in a car accident on March 5, 2005.

16.     Plaintiff STEVE SMITH is a resident and citizen of the State of Michigan.  The accident occurred in the State of Mississippi.

17.     Plaintiff FRANKLIN EDWARDS is a resident and citizen of the State of Alabama. The accident occurred in the State of Mississippi.

18.     Plaintiff ANDREA SACHS is and was at all times relevant a resident and citizen of the State of California.

19.     Plaintiff KEISHA LAVERGNE is and was at all times relevant a resident and citizen of the State of Texas.

20.     Plaintiff CHARLES VALCARCE-STUART is a resident and citizen of the State of Florida.  Charles Valcarce-Stuart has been appointed Personal Representative of the Estate of Rosaura Valcarce-Stuart.  He brings this action for Rosaura Valcarce-Stuart's injuries she received in an automobile accident in Miami-Dade County, Florida on May 20, 2008.

21.     Plaintiffs DAVID BOTELLO and ANGELICA ALVARADO are and were at all times relevant residents and citizens of the State of Texas.

4

22.     Plaintiff LOUIS MOYSELLO is and was at all times relevant a resident and citizen of the State of New York.

23.     Plaintiffs PETER CARPENTER and MARY CARPENTER are and were at all times relevant residents and citizens of the State of Vermont.

24.     Plaintiff AMBER JAMES is and was at all times relevant a resident and citizen of the State of California.

25.     Defendant GENERAL MOTORS LLC ("New GM" or "Defendant") is not a citizen of the states mentioned above.  General Motors LLC is (and was at the time this lawsuit was filed) a Delaware limited liability company with its principal place of business in Michigan.  General Motors LLC's sole member and 100 percent owner is General Motors Holdings LLC, which is also a Delaware limited liability company with its principal place of business in Michigan.  General Motors Holdings LLC's sole member and 100 percent owner is Defendant General Motors Company, which is (and was at the time this lawsuit was filed) a publicly traded Delaware corporation with its principal place of business in Michigan, making General Motors LLC a citizen and resident of Delaware and Michigan.

26.     With respect to the facts alleged and claims asserted in this Complaint, New GM is the corporate successor of General Motors Corporation ("Old GM"), which filed a voluntary Petition for relief under Chapter 11 of the U.S. Bankruptcy Code on June 1, 2009. (General Motors Corporation and General Motors LLC will be collectively referred to as "GM").  On or about July 10, 2009, New GM acquired substantially all of the  assets and assumed certain liabilities of Old GM by way of a Section 363 sale under Chapter 11 of the Bankruptcy Code.  Plaintiffs' causes of action in this lawsuit are brought against New GM for acts or omissions that occurred after July 10, 2009, and Plaintiffs do not assert any causes of action against Old GM.  Although this Complaint references  facts against Old GM, it  is  for background and  reference

5

purposes only. At all times relevant to the claims in this lawsuit, GM has been in the business of developing, manufacturing, and marketing cars throughout the states listed herein and the entire United States of America.

27. Complete diversity exists between Plaintiffs and Defendant. Plaintiffs are each seeking damages in excess of $75,000.00, exclusive of interest and costs. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332. Further, all claims are timely filed under the applicable state law from the date of accident or the date of recall, or other applicable date. Further, any allegedly applicable statute of limitation or statute of repose should be equitably or lawfully tolled or the Defendant equitably estopped from asserting any such affirmative defense or claim due to Defendant's purposeful and fraudulent concealment of the defects, which are subject of this lawsuit. Plaintiffs could not have known or been on reasonable notice of the Defendant's illegal conduct or the defects until they received actual notice of the applicable vehicle recall. Defendant's lack of timely recalls and failure to notify the U.S. Government of the accidents and injuries leading up to the recalls was done to dissuade or prevent civil claims against Defendant. As set forth more fully below, Defendant has unclean hands from its own behavior from July 10, 2009 to the present that should prevent its assertion of any statute of limitation or statute of repose affirmative defense.

28. Pursuant to the Court's instructions, Plaintiffs may file directly in the MDL court and reserve the right to have filed in another district. Plaintiffs filed in this District in order to advance the efficient and orderly resolution of claims arising from Defendant's conduct and its attendant nationwide devastating effects. Filing in this District does not alter the choice-of-law analysis and does not waive Plaintiffs' rights to transfer to another district at the conclusion of pretrial proceedings in this case. Therefore, this Complaint is filed by Plaintiffs as if they had filed in the district in which their accidents occurred, or other lawful jurisdiction.

a) For Plaintiffs COURTNEY OLUFS and JOSHUA OLUFS this complaint is filed as though it were filed in the Northern District of Illinois, Eastern Division.

b) For Plaintiff REGINA WERTH this complaint is filed as though it were filed in the Northern District of Florida, Pensacola Division.

c) For Plaintiff MICHAEL SAUSEDA this complaint is filed as though it were filed in the Southern District of Texas, Houston Division.

d) For Plaintiff TRACY COLEMAN this complaint is filed as though it were filed in the Northern District of Mississippi, Oxford Division.

e) For Plaintiff BRANT HACKBARTH this complaint is filed as though it were filed in the Western District of Pennsylvania, Pittsburgh Division.

f) For Plaintiff GINA MCGHEE this complaint is filed as though it were filed in the Southern District of Alabama, Mobile Division.

g) For Plaintiff MONICA SMITH this complaint is filed as though it were filed in the District of Nevada, Southern Division.

h) For Plaintiff MATTHEW SHELBY this complaint is filed as though it were filed in the District of Maryland, Northern Division.

i) For Plaintiff DARRIN FISCHER this complaint is filed as though it were filed in the Western District of Wisconsin.

j) For Plaintiff TERRY DAVIS this complaint is filed as though it were filed in the Northern District of Florida, Panama City Division.

k) For Plaintiff ANDRE FORBES this complaint is filed as though it were filed in the Eastern District of Arkansas, Jonesboro Division.

l) For Plaintiff MARY PATRICK this complaint is filed as though it were filed in the Southern District of California.

m) For Plaintiff TIFFANEY DAVIS this complaint is filed as though it were filed in the Western District of Virginia, Danville Division.

n) For Plaintiff JEROME SILLS this complaint is filed as though it were filed in the District of Massachusetts, Western Division.

o) For Plaintiff MICHAEL HIGGINS this complaint is filed as though it were filed in the Northern District of Ohio, Akron Division.

p) For Plaintiff STEVE SMITH this complaint is filed as though it were filed in the Northern District of Mississippi, Oxford Division.

q) For Plaintiff FRANKLIN EDWARDS this complaint if filed as though it were filed in the Southern District of Mississippi, Northern Division.

r) For Plaintiff ANDREA SACHS this complaint is filed as though it were filed in the Eastern District of California, Sacramento County.

s) For Plaintiff KEISHA LAVERGNE this complaint is filed as though it were filed in the Southern District of Texas, Galveston Division.

t) For Plaintiff CHARLES VALCARCE-STUART this complaint is filed as though it were filed in the Southern District of Florida, Miami Division.

u) For Plaintiffs DAVID BOTELLO and ANGELICA ALVARADO this complaint is filed as though it were filed in the Western District of Texas, Pecos Division.

v) For Plaintiff LOUIS MOYSELLO this complaint if filed as though it were filed in the Eastern District of New York.

w) For Plaintiffs PETER CARPENTER and MARY CARPENTER this complaint is filed as though it were filed in the District Court of Vermont.

x) For Plaintiff AMBER JAMES this complaint is filed as though it were filed in the Northern District of California, San Francisco Division.

29.    This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over New GM because New GM conducts substantial business in this District, and upon information and belief, consents to jurisdiction.

30.    Venue is proper in this District under 28 U.S.C. § 1391 because New GM, as a corporation, is deemed to reside in any judicial district in which it is subject to personal jurisdiction.

## II.    BACKGROUND FACTS

31.    As used in this petition, the "Subject Vehicles" refers to the vehicles the Plaintiffs were traveling in at the time of their accidents and the GM vehicles sold in the United States equipped at the time of sale with ignition switches ("Ignition Switches") sharing a common, uniform, and defective design or manufacture, including but not limited to the following makes and model years.

- 2005-2010 Chevrolet Cobalt
- 2006-2011 Chevrolet HHR
- 2006-2010 Pontiac Solstice
- 2003-2007 Saturn Ion
- 2007-2010 Saturn Sky
- 2005-2010 Pontiac G5
- 2004-2008 Pontiac Grand Prix
- 2003-2014 Cadillac CTS
- 2000-2005 Cadillac Deville
- 2004-2006 Cadillac SRX
- 2006-2011 Cadillac DTS
- 2005-2009 Buick Lacrosse

- 2006-2011 Buick Lucerne

- 2010-2014 Chevrolet Camaro

- 2000-2014 Chevrolet Impala

- 1997-2005 Chevrolet Malibu

- 2000-2007 Chevrolet Monte Carlo

- 1999-2004 Oldsmobile Alero

- 1998-2002 Oldsmobile Intrigue

- 1999-2005 Pontiac Grand Am

32.     Plaintiff JOSHUA OLUFS was operating a Subject Vehicle, a 2000 Chevrolet Malibu, manufactured and sold by Defendant, on September 25, 2008.  Plaintiff COURTNEY OLUFS was a passenger in the Subject Vehicle.  The vehicle's VIN is 1G1ND52J4Y6336099. On that date, Plaintiffs Joshua Olufs and Courtney Olufs were traveling westbound on Atkinson Road in Lake County, Illinois.  As they were traveling, due to the defects alleged herein, Plaintiff Joshua Olufs lost power/control to the vehicle.  Due to the loss of power/control, the vehicle left the roadway, traveled down an embankment and struck a tree.  Despite a significant impact, the frontal airbags did not deploy in the crash.  If such airbags had deployed, Plaintiffs Joshua Olufs and Courtney Olufs would either not have suffered injuries or suffered greatly reduced injuries.

33.     Plaintiff REGINA WERTH was operating a Subject Vehicle, a 2000 Chevrolet Malibu, manufactured and sold by Defendant, in 2007.  At some point during that year, Plaintiff Regina Werth was traveling in Okaloosa County, Florida.  As Plaintiff Regina Werth was making a sharp left turn, due to the defects alleged herein, she lost control/power to the vehicle.  This caused her vehicle to enter the path of an oncoming vehicle and the two cars collided.  Despite a significant impact, the frontal airbags did not deploy in the crash.  If such airbags had deployed,

Plaintiff Regina Werth would either not have suffered injuries or suffered greatly reduced injuries.

34.    Plaintiff MICHAEL SAUSEDA was the operator of a Subject Vehicle, a 2001/2002 Chevrolet Impala, manufactured and sold by Defendant, in December of 2008.  At some point during December of 2008, Plaintiff Michael Sauseda was operating the vehicle in Houston, Texas. As he was traveling, he was hit by a drunk driver.  Despite a significant impact, the frontal airbags did not deploy in the crash.  If such airbags had deployed Plaintiff Michael Sauseda would either not have suffered injuries or suffered greatly reduced injuries.

35.    Plaintiff TRACY COLEMAN survives Kenneth Coleman and brings this action on behalf of all eligible class members for Kenneth Coleman's wrongful death.  Kenneth Colman was operating a Subject Vehicle, a 2000 Cadillac Deville, manufactured and sold by Defendant, on December 5, 2008.  On that date, Kenneth Coleman was traveling in Mississippi.  As he was traveling, due to the defects alleged herein, he lost power/control to the vehicle.  Due to this loss of power/control, Kenneth Coleman traveled off the road, crashed, and was killed.  Despite a significant impact, the frontal airbags did not deploy in the crash.  If such airbags had deployed Kenneth Coleman would either not have died or suffered greatly reduced injuries.

36.    Plaintiff BRANT HACKBARTH was operating a Subject Vehicle, a 2001 Pontiac Grand Am, manufactured and sold by Defendant, on December 13, 2003.  On that date, Plaintiff Brant Hackbarth was traveling in Butler County, Pennsylvania.  Due to the defects alleged herein, Plaintiff Brant Hackbarth lost power/control to the vehicle.  This loss of power/control caused him to leave the roadway, hit a ditch and collide with guardrails.  Despite a signification impact, the frontal airbags did not deploy in the crash.  If such airbags had deployed, Plaintiff Brant Hackbarth would either not have suffered injuries or suffered greatly reduced injuries.

37.    Plaintiff GINA MCGHEE was a passenger of a Subject Vehicle, a 2008 Chevrolet Impala, manufactured and sold by Defendant, on January 3, 2009.  The vehicle's VIN is

2G1WD58CX89193228.  On that date, Plaintiff Gina McGhee was traveling in Baldwin County, Alabama.  As the vehicle entered a turn, due to the defects alleged herein, the driver lost power/control to the vehicle.  This loss of power/control caused the vehicle to leave the roadway and hit a row of trees. Despite a significant impact, the frontal airbags did not deploy in the crash.  If such airbags had deployed Plaintiff Gina McGhee would either not have suffered injuries or suffered greatly reduced injuries.

38.    Plaintiff MONICA SMITH was a passenger in a Subject Vehicle, a 2001 Chevrolet Monte Carlo, manufactured and sold by Defendant, in 2001.  At some point in that year, Plaintiff Monica Smith was traveling in Clark County, Nevada.  As she was traveling, due to the defects alleged herein, the driver of the vehicle lost power/control to the vehicle.  This loss of power/control caused the vehicle she was traveling in to crash.  Despite a significant impact, the frontal airbags did not deploy in the accident.  If such airbags had deployed Plaintiff Monica Smith would either not have suffered injuries or suffered greatly reduced injuries.

39.    Plaintiff MATTHEW SHELBY was operating a Subject Vehicle, a 2009 Chevrolet Malibu, manufactured and sold by Defendant, on May 13, 2009.  On that date, Plaintiff Matthew Shelby was traveling in the vehicle in Maryland.  As he was traveling, a dog appeared in the road that he was traveling on.  Plaintiff Matthew Shelby maneuvered to avoid the dog, but due to the defects alleged herein, he lost control/power to the vehicle.  This caused his car to leave the roadway, hit a ditch, and roll.  Despite a significant impact, the frontal airbags did not deploy in the crash.  If such airbags had deployed, Plaintiff Matthew Shelby would either not have suffered injuries or suffered greatly reduced injuries.

40.    Plaintiff DARRIN FISCHER was operating a Subject Vehicle, a 2003 Saturn Ion, manufactured and sold by Defendant, on May 26, 2003.  The vehicle's VIN is 1G8AG52F63Z172980.  On that date, Plaintiff Darrin Fischer was traveling on I-94 Westbound in

Jackson County, Wisconsin. As he was traveling, due to the defects alleged herein, Plaintiff Darrin Fischer lost power/control to the vehicle. This caused the vehicle to leave the roadway, re-enter and begin flipping. Despite a significant impact, the frontal airbags did not deploy in the crash. If such airbags had deployed Plaintiff Darrin Fischer would either not have suffered injuries or suffered greatly reduced injuries.

41.     Plaintiff TERRY DAVIS was operating a Subject Vehicle, a 2001 Chevrolet Impala, manufactured and sold by Defendant, on December 18, 2003. On that Date, Plaintiff Terry Davis was traveling in Washington County, Florida. As he was traveling down a highway, due to the defects alleged herein, Plaintiff Terry Davis lost power/control to the vehicle. This caused the vehicle to leave the roadway and collide with some trees. Despite a significant impact, the frontal airbags did not deploy in the crash. If such airbags had deployed, Plaintiff Terry Davis would either not have suffered injuries or suffered greatly reduced injuries.

42.     Plaintiff ANDRE FORBES was operating a Subject Vehicle, a 2000 Chevrolet Malibu, manufactured and sold by Defendant, on May 23, 2004. On that date, Plaintiff Andre Forbes was traveling on I-55 in Crittenden County, Arkansas. As he was traveling, due to the defects alleged herein, Plaintiff Andre Forbes lost power/control to the vehicle. This caused his vehicle to collide with a trailer of an 18-wheeler. Despite a significant impact, the frontal airbags did not deploy in the crash. If such airbags had deployed, Plaintiff Andre Forbes would either not have suffered injuries or suffered greatly reduced injuries.

43.     Plaintiff MARY PATRICK was operating a Subject Vehicle, a 1998 Chevrolet Malibu, manufactured and sold by Defendant, on December 4, 2004. On that date, Plaintiff Mary Patrick was traveling on a highway in California. As she was merging, due to the defects alleged herein, she lost power/control to the vehicle. Due to this loss of control, her vehicle was struck by another vehicle. Despite a significant impact, the frontal airbags did not deploy in the crash. If

such airbags had deployed, Plaintiff Mary Patrick would either not have suffered injuries or suffered greatly reduced injuries.

44.     Plaintiff TIFFANEY DAVIS was operating a Subject Vehicle, a 2001 Chevrolet Malibu, manufactured and sold by Defendant, on August 15, 2004.  On that date, Plaintiff Tiffaney Davis was traveling in Pittsylvania County, Virginia.  As she was traveling, due to the defects alleged herein, Plaintiff Tiffaney Davis lost control/power to the vehicle.   This loss of power/control caused her vehicle to leave the roadway and collide with a tree.  Despite a significant impact, the frontal airbags did not deploy in the crash.  If such airbags had deployed, Plaintiff Tiffaney Davis would either not have suffered injuries or suffered greatly reduced injuries.

45.     Plaintiff JEROME SILLS was operating a Subject Vehicle, a 1999 Oldsmobile Alero, manufactured and sold by Defendant, in November of 2004.  The vehicle's VIN is 1G3NL52T6XC367382.  At some point during that month, Plaintiff Jerome Sills was traveling on RT 5 in Hampden County, Massachusetts.  As he was traveling, due to the defects alleged herein Plaintiff Jerome Sills lost power/control to the vehicle. This loss of power/control caused the vehicle to slow down and it was subsequently rear ended by another vehicle.  Despite a significant impact, the frontal airbags did not deploy in the crash.  If such airbags had deployed, Plaintiff Jerome Sills would either not have suffered injuries or suffered greatly reduced injuries.

46.     Plaintiff MICHAEL HIGGINS survives Shatora Higgins and brings this action on behalf of all eligible class members for Shatora Higgins' wrongful death.  Shatora Higgins was a passenger in a Subject Vehicle, a 2004 Chevrolet Malibu, manufactured and sold by Defendant, on March 5, 2005.  On that date, Shatora Higgins was traveling Westbound on Crosby Street in Akron, Ohio.  As her vehicle was approaching the intersection of Crosby Street and Rhodes Avenue, the driver of her vehicle, due to the defects alleged herein, lost control/power to the vehicle.  This caused the vehicle to enter the intersection where it was hit by another car.  The

14

vehicle Shatora Higgins was traveling in then collided with a utility pole. Shatora Higgins was killed in the collision. Defendants' defects as alleged herein were the direct and proximate cause of Shatora Higgins' death.

47.    Plaintiff STEVE SMITH was a passenger in a Subject Vehicle, a 2001 Chevrolet Impala, manufactured and sold by Defendant, on April 23, 2005. On that date, Plaintiff Steve Smith was traveling in Yalobusha County, Mississippi. As Plaintiff Steve Smith was traveling, another vehicle traveling in the opposite direction swerved into Plaintiff Steve Smith's lane. Due to the defects alleged herein, the driver of Plaintiff Steve Smith's vehicle was unable to avoid another vehicle and collided with the other vehicle. Despite a significant impact, the frontal airbags did not deploy in the crash. If such airbags had deployed, Plaintiff Steve Smith would either not have suffered injuries or suffered greatly reduced injuries.

48.    Plaintiff FRANKLIN EDWARDS was operating a Subject Vehicle, a 2006 Cadillac CTS, manufactured and sold by Defendant, in September 2005. At some point in that month, Plaintiff Franklin Edwards was traveling in the state of Mississippi. As Plaintiff Franklin Edwards was traveling, due to the defects alleged herein, he lost power/control to the vehicle. Due to this loss of power/control, he was in an accident. Despite a significant impact, Plaintiff Franklin Edwards' airbags did not deploy in the crash. If such airbags had deployed, Plaintiff Franklin Edwards would either not have suffered injuries or suffered greatly reduced injuries.

49.    Plaintiff ANDREA SACHS was operating a Subject Vehicle, a 2007 Chevrolet Cobalt, manufactured and sold by Defendant, in August or September of 2008. The vehicle's VIN is 1G1AK55F177319233. At some point during that time frame, Plaintiff Andrea Sachs was traveling westbound on Interstate 80 in Placer County, California. As she was traveling, due to the defects alleged herein, Plaintiff Andrea Sachs lost power/control to the vehicle. This loss of power/control caused her vehicle to leave the roadway and strike a ditch. Despite a significant

15

impact, the frontal airbags did not deploy in the crash. If such airbags had deployed, Plaintiff Andrea Sachs would either not have suffered injuries or suffered greatly reduced injuries.

50.     Plaintiff KEISHA LAVERGNE was operating a Subject Vehicle, a 2006 Chevrolet Cobalt, manufactured and sold by Defendant, on August 18, 2007. The vehicle's VIN is 1G1AK55F667621230. On that date, Plaintiff Keisha Lavergne was traveling in Chambers County, Texas. As Plaintiff Keisha Lavergne was making a right turn, she lost power/control to the vehicle. Due to the loss of power/control, she struck another vehicle. Despite a significant impact, the frontal airbags did not deploy in the crash. If such airbags had deployed, Plaintiff Keisha Lavergne would either not have suffered injuries or suffered greatly reduced injuries.

51.     Plaintiff CHARLES VALCARCE-STUART has been appointed Personal Representative of the Estate of Rosaura Valcarce-Stuart and brings this action on behalf of the Estate. Rosaura Valcarce-Stuart was a passenger in a Subject Vehicle, a 2003 Saturn Ion, manufactured and sold by Defendant, on May 20, 2008. On that date, Rosaura Valcarce-Stuart was traveling in Miami-Dade County, Florida. Due to the defects alleged herein, the driver lost power/control of the vehicle. This loss of power/control caused the vehicle to hit a pothole and run into an object. Despite a significant impact, the air bags did not deploy in the crash. If such airbags had deployed, Rosaura Valcarce-Stuart would either not have been injured or would have suffered greatly reduced injuries.

52.     Plaintiff DAVID BOTELLO was operating a Subject Vehicle, a 2005 Chevrolet Cobalt manufactured and sold by Defendant, on April 7, 2007. ANGELICA ALVARADO was a passenger in the Subject Vehicle. The vehicle's VIN is 1G1AL52F057585700. On that date, Plaintiffs David Botello and Angelica Alvarado were traveling in Pecos County, Texas. As Plaintiffs David Botello and Angelica Alvarado were traveling, due to the defects alleged herein, Plaintiff David Botello lost power/control of the vehicle. This loss of power/control caused the

16

vehicle to travel off the road and hit a wall.  Despite a significant impact, the frontal airbags did not deploy in the crash.  If such airbags had deployed, Plaintiffs David Botello and Angelica Alvarado would either not have suffered injuries or suffered greatly reduced injuries.

53.    Plaintiff LOUIS MOYSELLO was operating a Subject Vehicle, a 2002 Chevrolet Impala manufactured and sold by Defendant, on January 13, 2007. On that date, Plaintiff Louis Moysello was traveling southbound on Brentwood Road in Suffolk County, New York.  As he was traveling, due to the defects alleged herein, he lost power/control to the vehicle.  This loss of control caused his vehicle to hit another vehicle before careening into a telephone pole.  Defendant's defects as alleged herein were the direct and proximate cause of his injuries.

54.    Plaintiff PETER CARPENTER was operating a Subject Vehicle, a 2007 Buick LaCrosse, manufactured and sold by Defendant, on March 25, 2009.   Plaintiff MARY CARPENTER was a passenger in the vehicle.  The vehicle's VIN is 2G4WC582971134472.  On that date, Plaintiffs Peter Carpenter and Mary Carpenter were traveling northbound on I-89 North in Windsor County, Vermont.  As they were traveling, due to the defects alleged herein, Plaintiff Peter Carpenter lost control/power to the vehicle.  This caused the vehicle to be hit from the right and pushed into the median before ultimately stopping near a guardrail.  Defendant's defects as alleged herein were the direct and proximate cause of their injuries.

55.    Plaintiff AMBER JAMES was operating a Subject Vehicle, a 2004 Saturn Ion manufactured and sold by Defendant on August 10, 2007.  On that date, Plaintiff Amber James was traveling in Lake County, California.  As Plaintiff Amber James was traveling, due to the defects alleged herein, she lost power/control to the vehicle.  This loss of power/control caused the vehicle to be hit by another vehicle.  Despite a significant impact, the frontal airbags did not deploy in the crash.  If such airbags had deployed, Plaintiff Amber James would either not have suffered injuries or suffered greatly reduced injuries.

17

56. As a result of the collisions described above, Plaintiffs suffered serious physical injuries and/or deaths and Defendant's defects as alleged herein were the direct and proximate cause of their injuries and/or deaths.

57. Unbeknownst to the Plaintiffs, their vehicles had serious and unreasonably dangerous defects with the ignition switches, electronic stability control system, steering system defect, vehicle crashworthiness, and/or lack of airbag sensors for rollover vehicle accident protection. Specifically, the ignition switch had the ability to change from the "Run" position to the "Accessory" position while the vehicle was moving, thereby causing the engine to lose power with a resultant loss of power to the steering, brakes, and other essential safety functions of the car. This defective condition directly resulted in a loss of safety functionality exactly at the time and place where the Plaintiffs most needed these essential functions to lessen the impact of the collisions. Additionally, at virtually any time, their vehicle's electronic power steering assist could shut off, making it extremely difficult to steer the vehicle. This defective condition directly resulted in a loss of safety functionality exactly at the time and place where the Plaintiff most needed these essential functions.

58. The problems with the Plaintiffs' vehicles were not unique. The Subject Vehicles were some of many vehicles subject to recent recall(s) relating to a large number of GM vehicles' ignition switches and electronic stability control systems. Recall notices were issued by New GM for certain makes of its vehicles, including the Plaintiffs' vehicles, throughout 2014. In these recalls, New GM issued notices to the National Highway Traffic Safety Administration ("NHTSA"), notifying it of recalls to include the vehicles mentioned in Paragraph 48 of this petition. The total number of vehicles affected by these recalls is in the millions.

59. As part of these recalls, New GM admitted that if the key ring is carrying added weight and the vehicle goes off road or experiences some other jarring event, it may unintentionally

18

move the key away from the "Run" position.

60.    New GM further admitted that if this occurred, engine power, power steering, and power braking will be affected, increasing the risk of a crash or vehicle stall.

61.    GM began installing defective ignition switches beginning as early as 2000 in certain GM vehicle models.  Upon information and belief, GM knew the ignition switches were defectively designed, but nonetheless continued to manufacture and sell defective ignition switches with the knowledge that they would be used in GM vehicles, including the Subject Vehicles.

62.    As background, and not as a basis for damages, the recently published "Report to the Board of Directors of General Motors Company Regarding Ignition Switch Recalls" authored by Anton R. Valukas ("The Valukas Report"), provides that GM made a conscious decision, in the fall of 2002, to use the defective ignition switch in the Subject Vehicles "that was so far below GM's own specifications that it failed to keep the car powered on in circumstances that drivers would encounter."  GM knew of, and approved, the final version of the Ignition Switch that was installed in millions of cars despite knowing that the force required to disengage the ignition switch was far below minimum specifications.

63.    As background, and not as a basis for damages, according to documents obtained by a United States House of Representatives committee during an investigation into the Defective Ignition Switches, GM opened an opened an engineering inquiry about the defective Ignition Switch in 2004 after customers complained that the Subject Vehicles could be turned off while driving.

64.    As background, and not as a basis for damages, in addition, as early as 2005, GM knew that a key hole design modification that would require a piece price increase of $0.50 per vehicle could prevent certain movements in the ignition switch of certain GM vehicles with the same or similar ignition switches. Yet GM found that the part was too expensive and the change

19

would take too much time.

65.     Because of defects in their design, the ignition switches installed in the Subject Vehicles are, by their nature, loose and/or improperly positioned and are susceptible to failure during normal and expected conditions.  The key sold with the Plaintiff's vehicles has a slot design which allows the key fob or chain to hang lower on the key and increases the chance of the key inadvertently moving from the "Run" to "Accessory" or "Off" position during ordinary driving maneuvers (the "Ignition Switch Defect").  When this ignition switch failure occurs, the motor engine and certain electrical components such as power-assisted steering and anti-lock brakes are turned off, thereby endangering the vehicle occupants and compromising the safety vehicles' safety features.

66.     The Ignition Switch Defect can occur at any time during normal and proper operation of the Subject Vehicles, meaning the ignition can suddenly switch off while it is moving at 70 mph on the freeway, leaving the driver unable to control the vehicle, and vulnerable to a nonfunctioning safety system.

67.     The Ignition Switch Defect precludes drivers and owners of the Subject Vehicles, such as Plaintiffs, from proper and safe use of their vehicles, reduces vehicle occupant protection, and endangers them and other vehicle occupants.  However, no driver or owner of the Subject Vehicles, including the Plaintiffs, knew, or could reasonably have discovered, the Ignition Switch Defect, prior to it manifesting in a sudden and dangerous failure.

68.     Upon information and belief, prior to the sale of the Subject Vehicles, GM knew of the Ignition Switch Defect through sources such as pre-release design, manufacturing, and field testing data; in-warranty repair data; early consumer complaints made directly to GM, collected by the National Highway Transportation Safety Administration's Office of Defect Investigation ("NHTSA ODI") and/or posted on public online vehicle owner forums; field testing done in

response to those complaints; aggregate data from GM dealers; and accident data. Despite this knowledge, GM failed to disclose and actively concealed the defects in the ignition switch from the Plaintiffs and the public, and continued to market and advertise the Subject Vehicles as reliable and safe vehicles, which they are not.

69.    As a result of GM's misconduct, the Plaintiffs suffered actual damages and physical injuries, in that the Subject Vehicles are unsafe, unfit for their ordinary and intended use, and have manifested, or are at unreasonable risk of manifesting, the Ignition Switch Defect by way of a sudden and dangerous failure that puts them and others at serious risk of injury or death. Drivers and owners of the Subject Vehicles, including the Plaintiffs, did not receive the benefit of their bargain as purchasers and/or lessees, received vehicles that were of a lesser standard, grade, and quality than represented, and did not receive vehicles that met ordinary and reasonable consumer expectations. Drivers and owners of the Subject Vehicles, including the Plaintiffs, did not receive vehicles that would reliably operate with reasonable safety, and that would not place drivers and occupants in danger of encountering an ongoing and undisclosed risk of harm, which could have been avoided, as GM knew but did not disclose, through the use of non-defective ignition parts. This paragraph does not seek any damages for any economic loss of value of the Subject Vehicles nor any consumer fraud damages.

70.    Further, Plaintiffs' claims for accidents occurring prior to July 10, 2009 were legally and equitably tolled, or in the alternative Defendant should be estopped from asserting any such limitations defense since the United States Bankruptcy Court in the Southern District of New York had legally barred these claims from July 10, 2009 until a recently announced reversal of that decision and order by the United States Court of Appeals for the Second Circuit on or about July 13, 2016 with such decision currently under a request for rehearing by Defendant GM. As such, Plaintiffs were practically and legally barred by Court order from asserting pre-July 2009 claims.

21

**COUNT I:**

**STRICT LIABILITY – MANUFACTURING DEFECT**

71.     Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

72.     Defendant designed, selected, inspected, tested, assembled, equipped, manufactured, marketed, distributed, and/or sold or otherwise placed into the stream of commerce the Subject Vehicles, including the Plaintiffs' vehicles, and component parts thereof, including but not limited to, equipping them with an ignition switch, steering system, rollover sensing system, and crash protection system with design, manufacturing, and/or marketing defects, more particularly set forth herein.

73.     Defendant had a legal duty to design, inspect, test, manufacture, and assemble the Subject Vehicles, including the Plaintiffs' vehicles, and the component parts so that they would be reasonably crashworthy and provide a reasonable degree of occupant safety in foreseeable collisions occurring in the highway environment of its expected use.

74.     At all times relevant herein, the Subject Vehicles, including the Plaintiffs' vehicles, and component parts thereof, including the ignition switch, were expected to reach, and did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

75.     It was foreseeable to Defendant that the Subject Vehicles would be sold to consumers throughout the United States, including the sale of the Plaintiffs' vehicles, and used in the manner for which they were intended by the Defendant.

76.     At all times relevant herein, the Subject Vehicles were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendant in a defective and unreasonably dangerous condition at the time they were placed in the

stream of commerce in ways which include, but are not limited to, one or more of the following:

(a)    the Subject Vehicles, including their component parts, which includes their ignition switches, electronic stability control, and steering systems contained manufacturing defects;

(b)    the ignition switches in the Subject Vehicles were inadequately designed and manufactured;

(c)    the Subject Vehicles, including their component parts, which includes their ignition switches, were not made in accordance with Defendant's specifications or performance standards;

(d)    the Subject Vehicles, as designed and manufactured, lack crashworthiness sufficient to comply with occupant protection standards; and/or,

(e)    the Subject Vehicles, as designed and manufactured, lack appropriate airbag sensors to protect occupants in a roll over vehicle crash.

77.    The manufacturing defects of the Subject Vehicles, including the Plaintiffs' vehicles, occurred while the product was in the possession and control of the Defendant.

78.    The manufacturing defects of the Subject Vehicles, including the Plaintiffs' vehicles, existed before they left the control of Defendant.

79.    It was foreseeable to Defendant that the Subject Vehicles and their component parts, including the ignition switch, which were manufactured, designed, inspected, tested, assembled, equipped, distributed, and/or sold or otherwise placed into the stream of commerce would fail and cause users and consumers like the Plaintiffs to be unable to control said vehicles and be involved in a collision.

80.    As a direct and proximate result of the foregoing acts and omissions, the Plaintiffs suffered severe and permanent physical injuries.  They have endured, and will continue to endure, substantial pain and suffering.  They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiffs have lost past earnings and have suffered a loss of earning capacity.  Plaintiffs have suffered and will continue to suffer

economic loss, and have otherwise been physically and economically injured.  Their injuries and damages are permanent and will continue into the future.  For the plaintiffs who bring claims of wrongful death and/or survival actions, those Plaintiffs have suffered loss of companionship, guidance, time with, and support of, the deceased family member.  They have further suffered funeral expenses, past medical expenses, loss of economic support, lost past and future earnings, and lost household contributions and support.  Plaintiffs seek actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiffs each pray for judgment in Count I against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT II:

### STRICT LIABILITY - DESIGN DEFECT

81. Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

82. Defendant designed, selected, inspected, tested, assembled, equipped, manufactured, marketed, distributed, and/or sold or otherwise placed into the stream of commerce the Subject Vehicles, including the Plaintiffs' vehicles, and component parts thereof, including but not limited to, equipping them with an ignition switch, steering system, rollover sensing system, and crash protection system with design, manufacturing, and/or marketing defects, more particularly set forth herein.

83. Defendant had a legal duty to design, inspect, test, manufacture, and assemble the Subject Vehicles, including the Plaintiffs' vehicles, and the component parts so that they would be reasonably crashworthy and provide a reasonable degree of occupant safety in foreseeable

24

collisions occurring in the highway environment of its expected use.

84.    At all times relevant herein, the Subject Vehicles, including the Plaintiffs' vehicles, and component parts thereof, including the ignition switch and steering system, were expected to reach, and did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

85.    It was foreseeable to Defendant that the Subject Vehicles would be sold to consumers throughout the United States, including the sale of the Plaintiffs' vehicles, and used in the manner for which they were intended by the Defendant.

86.    At all times relevant herein, the Subject Vehicles were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendant in a defective and unreasonably dangerous condition at the time they were placed in the stream of commerce in ways which include, but are not limited to, one or more of the following:

(a)    having an ignition switch that is inadequately designed and located, which may result in the key moving from the "Run" to "Accessory" or "Off" position during normal driving maneuvers;

(b)    having an ignition switch that allows the Plaintiffs' vehicles to stall or lose engine power, and steering and/or full braking ability while driving;

(c)    having frontal airbags that may not deploy when the key is in the accessory/off position;

(d)    lacking adequate occupant protection and/or airbag sensors to protect vehicle occupants during rollover crashes; and,

(e)    have a defective electronic stability control system and steering system that causes the vehicle driver to lose control as normal speeds;

(f)    failing to adequately warn the Plaintiffs, other consumers, or the public in general, about the unsafe and defective condition and design of the vehicle known to GM, so that individuals like the Plaintiffs could make informed and prudent decisions regarding the purchase and/or use of such vehicles.

87.    When placed in the stream of commerce, the Subject Vehicles were defective in

design, in that they were not reasonably fit, suitable, or safe for their intended purpose and/or their foreseeable risks exceed the benefits associated with their design, making the use of the Subject Vehicles more dangerous than an ordinary consumer would expect, and more dangerous than risks associated with alternatives.

88.     In addition, at the time the Subject Vehicles left the control of the Defendant, there were practical and feasible alternative designs of the Subject Vehicles and their component parts, including the ignition switches that would have prevented and/or significantly reduced the risk of Plaintiffs' injuries without impairing the reasonably anticipated or intended function of the Subject Vehicles.  These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk of Plaintiff's injuries without substantially impairing the Subject Vehicle's utility.

89.     As a direct and proximate result of the foregoing acts and omissions, the Plaintiffs suffered severe and permanent physical injuries.  They have endured, and will continue to endure, substantial pain and suffering.  They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiffs have lost past earnings and have suffered a loss of earning capacity.  Plaintiffs have suffered and will continue to suffer economic loss, and have otherwise been physically and economically injured.  Their injuries and damages are permanent and will continue into the future.  For the plaintiffs who bring claims of wrongful death and/or survival actions, those Plaintiffs have suffered loss of companionship, guidance, time with, and support of, the deceased family member.  They have further suffered funeral expenses, past medical expenses, loss of economic support, lost past and future earnings, and lost household contributions and support.  Plaintiffs seek actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiffs each pray for judgment in Count II against Defendant for

26

damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

**COUNT III:**

**STRICT LIABILITY - FAILURE TO WARN**

90.     Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

91.     Defendant designed, selected, inspected, tested, assembled, equipped, manufactured, marketed, distributed, and/or sold or otherwise placed into the stream of commerce the Subject Vehicles, including the Plaintiffs' vehicles, and component parts thereof, including but not limited to, equipping them with an ignition switch, steering system, rollover sensing system, and crash, manufacturing, and/or marketing defects, more particularly set forth herein.

92.     Defendant had a legal duty to design, inspect, test, manufacture, and assemble the Subject Vehicles, including the Plaintiffs' vehicles, and the component parts so that they would be reasonably crashworthy and provide a reasonable degree of occupant safety in foreseeable collisions occurring in the highway environment of its expected use.

93.     At all times relevant herein, the Subject Vehicles were expected to reach, and in fact did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

94.     At all times relevant herein, the Subject Vehicles, including the Plaintiffs' vehicles and component parts thereof, including the ignition switch system, were expected to reach, and did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

95.     It was foreseeable to Defendant that the Subject Vehicles would be sold to

27

consumers throughout the United States, including the sale of the Plaintiffs' vehicles, and used in the manner for which they were intended by the Defendant.

96.    At all times relevant herein, the Subject Vehicles, including the Plaintiffs' vehicles, were defective and unreasonably dangerous when they left the possession of Defendant in that they contained warnings insufficient to alert consumers and users, including the Plaintiffs herein, of the dangerous risks associated with the defective condition of the Subject Vehicles, notwithstanding Defendant's knowledge of the dangerous risks, including but not limited to the following:

(a)    having an ignition switch that is inadequately designed, constructed, and/or located, which may result in the key moving from the "Run" to "Accessory" or "Off" position during normal driving maneuvers;

(b)    having an ignition switch that allows the Plaintiffs' vehicles to stall or lose engine power, and steering and/or full braking ability while driving;

(c)    having frontal airbags that may not deploy when the key is in the accessory/off position; and,

(d)    lacking adequate occupant protection and/or airbag sensors to protect vehicle occupants during rollover crashes; and,

(e)    have a defective electronic stability control system and steering system that causes the vehicle driver to lose control as normal speeds;

(f)    failing to adequately warn the Plaintiffs, other consumers, or the public in general, about the unsafe and defective condition and design of the Subject Vehicles known to GM, so that individuals like the Plaintiffs could make informed and prudent decisions regarding the purchase and/or use of such vehicles.

97.    The Plaintiffs could not, by the exercise of reasonable care, have discovered the defects herein mentioned and perceived their danger.

98.    Defendant knew or should have known of the risks of the defective condition of the Subject Vehicles and their component parts.

99.    Additionally, Defendant, as manufacturer, designer, distributor, and/or seller of the Subject Vehicles is held to the level of knowledge of an expert in the field.

100.    The Plaintiffs reasonably relied upon the skill, superior knowledge and/or judgment of Defendant.

101.    Defendant had a duty to warn the Plaintiffs and consumers of the dangers associated with the Subject Vehicles and their component parts, including the ignition switch.

102.    Despite Defendant's knowledge of the risks of the defective condition of the Subject Vehicles and their component parts, Defendant failed to adequately warn the Plaintiffs and consumers of those risks.

103.    Had the Plaintiffs received adequate warnings regarding the unsafe and defective condition of the Subject Vehicles and their risks, they would not have purchased and/or used such vehicle.

104.    As a direct and proximate result of the foregoing acts and omissions, the Plaintiffs suffered severe and permanent physical injuries. They have endured, and will continue to endure, substantial pain and suffering. They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiffs have lost past earnings and have suffered a loss of earning capacity. Plaintiffs have suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally, and economically injured. Their injuries and damages are permanent and will continue into the future. For the plaintiffs who bring claims of wrongful death and/or survival actions, those Plaintiffs have suffered loss of companionship, guidance, time with, and support of, the deceased family member. They have further suffered funeral expenses, past medical expenses, loss of economic support, lost past and future earnings, and lost household contributions and support. Plaintiffs seek actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiffs each pray for judgment in Count III against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable,

29

costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT IV:

## NEGLIGENCE

105.    Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

106.    Defendant was negligent in designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the Plaintiffs' vehicles.

107.    Defendant had a duty to individuals, including Plaintiffs, to use reasonable care in designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the Plaintiffs' vehicles.

108.    Defendant was negligent in failing to use reasonable care as described here in designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the Plaintiffs' vehicles. Defendant breached its aforementioned duty by:

(a)    Failing to design the ignition switch, the power control modules, and/or the airbag protection systems so as to avoid an unreasonable risk of harm to drivers, users, and occupants, including Plaintiffs, of the Subject Vehicles, including the Plaintiffs' vehicles;

(b)    Failing to manufacture the ignition switch, the power control modules, and/or the airbag protection systems so as to avoid an unreasonable risk of harm to drivers, users, and occupants of the Subject Vehicles, the Plaintiffs' vehicles, including Plaintiffs;

(c)     Failing to use reasonable care in the testing of the ignition switch, the power control modules, and/or the airbag protection systems so as to avoid an unreasonable risk of harm to drivers, users, and occupants of the Subject Vehicles, including the Plaintiffs' vehicles, including Plaintiffs;

(d)     Failing to use reasonable care in inspecting the ignition switch the power control modules, and/or the airbag protection systems so as to avoid an unreasonable risk of harm to drivers, users, and occupants of the Subject Vehicles, including the Plaintiffs' vehicles, including Plaintiffs;

(e)     Otherwise negligently or carelessly designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the Plaintiffs' vehicles;

(f)     lacking adequate occupant protection and/or airbag sensors to protect vehicle occupants during rollover crashes; and,

(g)     having a defective electronic stability control system and steering system that causes the vehicle driver to lose control as normal speeds.

109.    Defendant also negligently failed to warn or instruct the Plaintiffs and/or others that the defects were selected and installed in the Subject Vehicles, including the Plaintiffs' vehicles, had an unsafe and defective condition and design which was known to Defendant.

110.    As a direct and proximate result of the foregoing acts and omissions, the Plaintiffs suffered severe and permanent physical injuries. They have endured, and will continue to endure, substantial pain and suffering. They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiffs have lost past earnings and have suffered a loss of earning capacity. Plaintiffs have suffered and will continue to suffer economic loss, and have otherwise been physically and economically injured. Their injuries and damages are permanent and will continue into the future. For the plaintiffs who bring claims of wrongful death and/or survival actions, those Plaintiffs have suffered loss of companionship, guidance, time with, and economic and social support of, the deceased family member. They have further suffered funeral expenses, past medical expenses, loss of economic support, lost past and

31

future earnings, and lost household contributions and support. Plaintiffs seek actual and aggravating/punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiffs each pray for judgment in Count IV against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT V:

## FRAUDULENT CONCEALMENT

111. Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

112. At all times during the course of dealing between Defendant and Plaintiffs and the general public, Defendant misrepresented the safety of the Subject Vehicles, including the Plaintiffs' vehicles, for their intended use.

113. Defendant knew or was reckless in not knowing that its representations were, in fact, false.

114. In representations to Plaintiffs and the general public, Defendant fraudulently concealed and intentionally omitted material information, including but not limited to, the fact that:

(a)    the Subject Vehicles were manufactured and/or designed negligently, defectively, and/or improperly in that the ignition switches and other systems as set forth above were installed in the Subject Vehicles are, by their nature, loose and/or improperly positioned and are susceptible to failure during normal and expected conditions;

(b)    the keys sold with the Subject Vehicles have a slot design which allows the key fob or chain to hang lower on the key and increases the chance of the key inadvertently moving from the "Run" to "Accessory" or "Off" position during ordinary driving maneuvers (the "Ignition Switch Defect"); and,

(c)    when this ignition switch failure occurs, the motor engine and certain electrical components such as power-assisted steering and anti-lock brakes are turned off, thereby endangering the vehicle occupants and compromising the vehicle safety

32

system.

115. Defendant was under a duty to disclose to Plaintiffs and consumers the defective nature of the Subject Vehicles, including, but not limited to, the Ignition Switch Defect, electronic stability control defect, steering defect, crashworthiness defects, and lack of rollover airbag sensor defect.

116. Defendant had sole access to material facts concerning the defective nature of the Subject Vehicles and its propensity to cause serious and dangerous side effects, and hence cause damage to persons who used the Subject Vehicles, including Plaintiffs in particular.

117. Defendant's concealment and omissions of material facts concerning, inter alia, the safety of the Subject Vehicles was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiffs and consumers into reliance on the use of the Subject Vehicles, and to cause them to purchase and/or use the product.

118. Defendant knew that consumers had no way to determine the truth behind Defendant's concealment and omissions, as set forth herein.

119. Plaintiffs reasonably relied on facts revealed which negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendant.

120. As a direct and proximate result of the foregoing acts and omissions, the Plaintiffs suffered severe and permanent physical injuries. They have endured, and will continue to endure, substantial pain and suffering. They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiffs have lost past earnings and have suffered a loss of earning capacity. Plaintiffs have suffered and will continue to suffer economic loss, and have otherwise been physically and economically injured. Their injuries and damages are permanent and will continue into the future. For the plaintiffs who bring claims of wrongful death and/or survival actions, those Plaintiffs have suffered loss of companionship,

guidance, time with, and support of, the deceased family member. They have further suffered funeral expenses, past medical expenses, loss of economic support, lost past and future earnings, and lost household contributions and support. Plaintiffs seek actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiffs each pray for judgment in Count V against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

**COUNT VI:**

**STATUTORY ACTIONS**

121. Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Petition as if fully copied and set forth at length herein.

122. For all claims that are subject to a state statutory regime, those claims are brought under the applicable state statutes as follows:

- Brought pursuant to Ind. Code Ann. §§ 34-20-1-1 *et seq.*

- For Plaintiffs whose claims are subject to the Kansas Product Liability Act, those claims are brought pursuant to Kan. Stat. Ann. §§ 60-3301 *et seq.*

- For Plaintiffs whose claims are subject to the Product Liability Act of Kentucky, those claims are brought pursuant to Ky. Rev. Stat. Ann. §§ 411.300 *et seq.*

- For Plaintiffs whose claims are subject to the Louisiana Products Liability Act, those claims are brought pursuant to La. Rev. Stat. Ann. §§ 9:2800.52 *et seq.*

- For Plaintiffs whose claims are subject to Michigan's products liability statute(s), those claims are brought pursuant to Mich. Comp. Laws. Ann. §§ 600.2945 *et seq.*

- For Plaintiffs whose claims are subject to the Mississippi Products Liability Act, those claims are brought pursuant to Miss. Code Ann. §§ 11-1-63.

- For Plaintiffs whose claims are subject to Missouri's product liability statute(s), those claims are brought pursuant to Mo. Stat. Ann. §§ 537.760 *et seq.*

- For Plaintiffs whose claims are subject to Nebraska's product liability statute(s), those claims are brought pursuant to Neb. Rev. Stat. §§ 25-21, 180 *et seq.*

- For Plaintiffs whose claims are subject to New Jersey's product liability statute(s), those claims are brought pursuant to N.J. Stat. Ann. §§ 2A:58C-1 *et seq.*

- For Plaintiffs whose claims are subject to the North Carolina Products Liability Act, those claims are brought pursuant to N.C. Gen. Stat. Ann. §§ 99B-1 *et seq.*

- For Plaintiffs whose claims are subject to North Dakota's product liability statute(s), those claims are brought pursuant to N.D. Cent. Code §§ 28-01.3-01 *et seq.*

- For Plaintiffs whose claims are subject to the Ohio Product Liability Act, those claims are brought pursuant to Ohio Rev. Code §§ 2307-71 *et seq.*

- For Plaintiffs whose claims are subject to Oregon's product liability statute(s), those claims are brought pursuant to Or. Rev. Stat. Ann. §§ 30.900 *et seq.*

- For Plaintiffs whose claims are subject to the Tennessee Products Liability Act of 1978, those claims are brought pursuant to Tenn. Code Ann. §§ 29-28-101 *et seq.*

- For Plaintiffs whose claims are subject to Texas's product liability statute(s), those claims are brought pursuant to Tex. Civ. Prac. & Rem. Code Ann. §§ 82.001 *et seq.*

- For Plaintiffs whose claims are subject to the Utah Product Liability Act, those claims are brought pursuant to Utah Code Ann. §§ 78B-6-701 *et seq.*

- For Plaintiffs whose claims are subject to the Washington Product Liability Act, those

claims are brought pursuant to Wash. Rev. Code Ann. §§ 7.72.010 *et seq*.

- For Plaintiffs whose claims are subject to Wisconsin's product liability statute(s), those claims are brought pursuant to Wis. Stat. Ann. §§ 895.046 *et seq*.

## COUNT VII:

## PUNITIVE DAMAGES

123.    Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

124.    While New GM expressly accepted responsibility for accident occurring on or after July 10, 2009, it also acquired knowledge of Old GM's activities generally, and the existence of the defective ignition switches and or electronic stability control defects in place in millions of vehicles specifically.  New GM acquired personnel, documents, and electronic data from Old GM, including but not limited to, top leadership personnel, executives, members of the Board of Directors, internal legal counsel, engineers and quality control personnel.  Most importantly, New GM retained the engineer in charge of designing and approving the manufacturing specifications of the defective ignition switch.  The employees retained by New GM carried with them the knowledge they gained at Old GM.  New GM also acquired knowledge about the issues with the ignition switch, moving stalls and airbag non-deployment through the chief engineer, design and manufacturing documents, internal memorandum, and reports to the Board of Directors.  New GM continued to service – and to receive complaints about – vehicles manufactured on Old GM's watch.

125.    New GM also acquired certain duties with regard to vehicles in production and on the road at the time of the Sale and Purchase Agreement – duties it breached egregiously – as has been well-publicized and for which it has been justifiably criticized.  These duties included, but

36

are not limited to, those arising under the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § and the Transportation Recall Enhancement, Accountability and Documentation Act, 49 U.S.C. §§ 30101-30170.  GM was fined $35 Million by NTSHA for its delayed reporting of the ignition switch problem and violating federal safety laws.

126.    New GM's liability for damages is attributable to its own post-sale conduct and failure to timely remedy and/or recall vehicles it knew had deadly defects, even with regard to vehicles manufactured and sold prior to the Sale and Purchase Agreement.

127.    Defendant sold the Subject Vehicles, including the Plaintiffs' vehicles, to consumers without doing adequate testing to ensure that the Subject Vehicles were reasonably safe for their use and intended purposes.  Plaintiffs only seek to impose punitive damages on New GM for its own conduct from July 10, 2009 to the present.

128.    Defendant sold the Plaintiffs' vehicles in spite of its knowledge that the ignition switches can unexpectedly and suddenly move from the "On" or "Run" position while the vehicles are in operation to the "Off" or "Accessory" position, and despite full knowledge of the other defects listed in this Complaint, thereby causing severe injuries suffered by Plaintiffs and numerous other individuals.

129.    Defendant ignored reports of consumers, which began as early as 2004 and continue to the date of the recalls in this case, regarding the ignition switch of certain GM vehicles with the same or similar ignition switches throughout the United States and elsewhere of the products' failures to perform as intended, which led to the severe injuries suffered by Plaintiffs and numerous other individuals.

130.    Defendant knew of the Subject Vehicles' defective and unreasonably dangerous nature, but continued to manufacture, market, distribute, and sell the products so as to maximize sales and profits at the expense of the health and safety of the public.

131.     Defendant, through its conduct in designing, testing, manufacturing, assembling, marketing, selling, and failing to adequately repair the Plaintiffs' vehicles purchased and/or used by Plaintiffs, demonstrated willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifferent to consequences, thereby justifying an award of punitive damages.

WHEREFORE, Plaintiffs respectfully request that in addition to actual damages, they be awarded an additional amount as and for punitive damages in their favor and against Defendant, in an amount which will serve to punish Defendant and deter Defendant and others from like conduct in the future.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Respectfully submitted,

**THE POTTS LAW FIRM, LLP**

By: */s/ Eric G. Jensen_____*
  Eric G. Jensen   MO# 43094
  Derek H. Potts   MO# 44882
  100 Waugh, Suite 350
  Houston, Texas 77007
  (713) 963-8881 (telephone)
  (713) 583-5388 (facsimile)
  ejensen@potts-law.com
  dpotts@potts-law.com

**ATTORNEYS FOR PLAINTIFF**